McKinney, J.,
delivered the opinion of the Court.
The complainants, tvho are minors, seek to set aside the sale of a tract of land and two slaves, procured to be made *675 by their guardian, in conjunction with the personal representative of the estate of their deceased father.
H. K. Bennett, their father, died in Eranklin county, in 1846, leaving- a widow and three infant children surviving him. The widow was appointed administratrix of the estate, which consisted of a tract of land, some slaves, and other personal property. In 1848 the widow intermarried with the defendant, John P. Kennerly, who, shortly afterwards, was appointed guardian of the three children, and continued to occupy that relation until July, 1855, when he was displaced, by the final judgment of the circuit court of said county, for mismanagement of the estate of his wards and failure to comply with the statutes in such cases, as the record states.
The bill does not specifically pray for an account against either the guardian or personal representative: the relief asked is confined to an impeachment of the sales of the land and slaves. The proof, in this record, presents a strong case for relief.
At the November term, 1848 — very soon after the marriage of Kennerly with the widow — a petition was presented, in their joint names, to which the minor children were not pai ties, at all, asking the* circuit court to sell two slaves, Eelix and George, each stated to be worth about $250.00, for the purpose of paying off debts due from the estate, “ to the amount of tioo hundred and ten or fifteen dollars, of which there is no specification rvhatever. On the same day on which the petition was presented, an order was made, on the mere statement of the petition, without proof, that the petitioners should sell Felix ; and he was accordingly sold, and purchased by Sherrod Williams, at the price of $186.00. This sale was confirmed afterwards by the court.
At the March term, 1858, of said circuit court, another petition, in the names of Kennerly and wife alone — the minor children being neither plaintiffs nor defendants — was presented, asking the sale of “ one or more of the remaining slaves of the estate to re-imburse the petitioners for advances *676 alleged to have been made, out of their own funds, for the benefit of the estate. And on the same day on which it was presented, an order was made that the clerk of the court should proceed to sell “ such one of the negroes,” belonging to the estate, as the petitioners should “ deliver to him and pay over the proceeds of said sale to the petitioners. Under this order, a boy named George was sold, on the 6th of June, 1858, at the price of $855.00. The proof establishes, and it is not denied by defendant’s counsel, that Kennerly secretly procured one Henry Sanders to bid for the slave, for his, Kennedy's benefit; and it is likewise proved, that Kennerly immediately took possession of the slave, as his property, and sometime afterwards, sold him for $500.00.
At the same term of the court, Kennerly and wife presented another petition, joining the minors with them, asking to have the remaining slaves divided, and to have dower assigned to' Mrs. Kennerly; and also asking to have the remainder of the land sold, on the ground that it was not susceptible of division amongst the children. All which was ordered to be done.
As respects this part of the case — the assignment of the dower, and the sale of the residue of the land — the conduct of the guardian, according to the proof, was a gross fraud upon the rights of the infant wards.
The tract of land was a small one, consisting of only about one hundred and thirty acres; and it was deficient in timber. In laying off the dower, the mansion house and other improvements, were abandoned, and the dower was so laid off as to take in the principal part of the timbered land. This was procured to be done by the interference and management of the guardian and his brother, who induced the commissioners to yield to their wishes. And the motive for this — as unwittingly disclosed by the guardian to Farris, one of the witnesses — was to depreciate the value of the children’s portion of the land, by depriving it of timber, so that, when it was sold, no one would be likely to compete with *677 him in bidding for it. Tbe portion of the minors w;as directed, by the order, to be offered at the minimum price of $9 per acre ; it was sold, however, at over $12.50, and was secretly purchased by the guardian, through his brother-in-law, Gibson. This fact is clearly proved, notwithstanding the astounding denials of the answers of Kennerly and Gibson. The very shallow artifice resorted to, with a view to cloak this fraudulent scheme, was this: that the title should be decreed to Gibson ; and, inasmuch as the purchase money was actually advanced by Kennerly, he should take Gibson’s note for it, and, to give the thing the semblance of a loan ; and, thereupon, by an instrument of writing, the real purchaser, Kennerly, was to go into possession of the land, and hold until Gibson discharged said note ; which was never to be done. This is a very brief and imperfect sketch of this somewhat complicated and most aggravated scheme of fraud, to acquire title in himself to the land of his wards, concocted and executed by the guardian and his associates.
This transaction cannot be permitted to stand. The sale will be set aside and declared void ; the purchase money, with interest, will be refunded to Kennerly; and he will be held to account for the reasonable value of the annual rents, with an allowance for permanent improvements, made upon the land, to the extent that such improvements have enhanced the value of the property, but not to exceed the value of the rents. The complainants are also entitled to have the assignment of the dower set aside, if it shall be thought most for their interest to have a re-assignment.
The sales of the slaves were absolutely void. As to the boy, George, fraudulently purchased by the guardian, and re-sold by him, a clear case of conversion is made out; and the complainants have an election to insist, either upon a return of the slave, or his present cash value, or the price for which he was sold, with interest. As respects the boy, Felix, the purchaser is not a party ; the complainants have an unquestionable right to pursue the slave in the hands of Williams, the purchaser, and either to recover the possession, *678 or tlie present value of the slave ; or they may elect to take from Kennerly the value of the slave at the time of the sale— the sale being a conversion of itself, on the ground that it was an absolute nullity.
As regards the land alleged to have been disposed of by the act of the guardian, we express no opinion ; this question will be left open until the final hearing.
The case will be remanded to have the account taken, and such amendments made as shall be thought proper. The next friend of the complainants is displaced; and on the return of the cause to the chancery court, the Chancellor is directed to substitute a suitable person in his stead.
The decree dismissing the bill is, in all things, reversed, and the entire costs of the cause will be paid by the defendants, 'the Kennerlys and Gibson.